[Cite as *In re T.M.*, 2022-Ohio-3219.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: T.M.

C.A. No.    30197

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 21 01 0042

DECISION AND JOURNAL ENTRY

Dated: September 14, 2022

HENSAL, Presiding Judge.

{¶1} Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated his parental rights and placed his child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother and Father are the biological parents of T.M., born February 2, 2009, and another older child who is not a subject of this appeal. Both children were subjects of a prior juvenile case filed in 2018, wherein the siblings were adjudicated dependent and ultimately placed in the legal custody of Father. Mother has not had any involvement with the children for several years.

{¶3} In early January 2021, T.M. called the police because Father and her brother were fighting and the child was afraid because the situation had turned violent. The police removed T.M. from Father's home pursuant to Rule 6 of the Juvenile Rules of Procedure but allowed her

brother to remain there. Father participated in a team decision meeting the next day and informed CSB that, while the child's sibling was doing well in Father's home, he was not able to manage T.M. there as well. Accordingly, CSB filed a complaint alleging that T.M. was a dependent child.

{¶4} After an adjudicatory hearing which Father did not attend, the juvenile court found that T.M. was a dependent child. Father was allowed to visit with the child as he might arrange with the caseworker. After the dispositional hearing, the child was placed in the temporary custody of CSB and continued to reside in a level 4 therapeutic home, described as one step below a residential treatment facility. Because the evidence demonstrated that T.M. did not want to see Father and wanted no contact with her brother, the court ordered that Father could not have in person visitation although T.M. was permitted to call Father under supervised conditions as determined by the caseworker and guardian ad litem.

{¶5} The juvenile court adopted the agency's proposed case plan as part of its dispositional order. Father was required to obtain a mental health assessment, follow all recommendations, and sign any necessary releases of information. In addition, he was required to participate in family home counseling and/or case management services to address parenting struggles, behavioral issues and conflicts within the family, and the lack of structure within the household. T.M. was required to obtain a mental health evaluation, attend any recommended counseling, and take any prescribed medications as directed.

{¶6} Father did not attend the scheduled review hearing. After considering the evidence presented, the juvenile court maintained T.M. in the agency's temporary custody.

{¶7} Shortly thereafter, CSB filed a motion for permanent custody. The agency alleged three alternative first-prong grounds, specifically, (1) that the child could not or should not be returned to either parent's custody, (2) that Mother had abandoned the child, and (3) that T.M. had

been in the agency's temporary custody for 12 months during the past 22 consecutive months. In support of its assertion that the child could not or should not be returned to her parents, CSB alleged that both parents had failed to remedy the concerns that led to the child's removal, that Mother had abandoned the child, and that Mother and Father both demonstrated a lack of commitment to T.M. Finally, the agency alleged that an award of permanent custody was in the child's best interest.

{¶8} Father attended the permanent custody hearing. During his closing argument, Father's attorney requested that the juvenile court grant a first six-month extension of temporary custody. After consideration of the evidence presented at the hearing, the juvenile court found that CSB had presented clear and convincing evidence to support all three first-prong grounds alleged in its permanent custody motion and that the termination of all parental rights was in the best interest of the child. The trial court expressly found that the requirements for granting a first six-month extension of temporary custody had not been met. The juvenile court awarded permanent custody of T.M. to CSB. Father filed a timely appeal and raises three assignments of error for our consideration. This Court consolidates some assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY FINDING 12 OF 22 AS ONE OF THE REQUIRED PRONGS FOR PERMANENT CUSTODY.

{¶9} Father argues that the juvenile court erred when it found that T.M. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. This Court disagrees.

{¶10} As discussed in greater detail below, the juvenile court may only award permanent custody of a child to the agency if the agency proves by clear and convincing evidence one of the

statutory first-prong requirements and that permanent custody is in the child's best interest. R.C. 2151.414(B). CSB alleged "12 of 22" as one of its alternative first-prong bases. That requirement is met under the following condition:

> The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

R.C. 2151.414(B)(1)(d). The statute clarifies that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." R.C. 2151.414(B)(1).

{¶11} It is well settled that the first-prong grounds alleged in the agency's motion for permanent custody must exist at the time it files its motion. *In re J.B.*, 9th Dist. Summit Nos. 28752 and 28753, 2018-Ohio-244, ¶ 15, citing *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 27. Accordingly, as CSB filed its motion for permanent custody on July 9, 2021, T.M. must have been in agency temporary custody for at least 12 months during the 22-month lookback period which began on September 9, 2019.

{¶12} In construing the 22-month period required by Section 2151.414(B)(1)(d), the Ohio Supreme Court has applied the plain language of the statute, finding it to be clear and unambiguous. *In re N.M.P.*, 160 Ohio St.3d 472, 2020-Ohio-1458, ¶ 22. "[Section] 2151.414(B)(1)(d) simply requires 12 or more months of temporary custody within a consecutive 22-month period. Nothing in [Section] 2151.414(B)(1)(d) requires 22 months of agency involvement before the agency seeks permanent custody." *Id*. For example, "[t]o meet the

statutory requirement * * *, the child might have been placed in the agency's custody for one continuous period or the child might have been placed in the agency's custody, removed from the agency's custody, and then returned to the agency's custody." *Id.* at ¶ 23. The high court further clarified:

> In other words, the 22-consecutive-month requirement serves as a limitation period that defines a prescribed period of time to quantify the duration of the agency's temporary custody. *In re I.D.*, 7th Dist. Columbiana No. 09 CO 13, 2009-Ohio-6805, ¶ 43. It does not prescribe some minimum period of time of agency involvement with the child.

*Id.* at ¶ 24.

{¶13} This reasoning applies to encompass any time that a child has spent in the agency's temporary custody in a prior case, as long as the juvenile court constrains its consideration to the 22-month lookback period from the date the agency filed its motion for permanent custody in the case before it. *See In re A.C.*, 9th Dist. Summit No. 23090, 2006-Ohio-3337, ¶ 13-16. In this case, the certified copy of the child's 2018 dependency case indicates that T.M. was in the agency's temporary custody on September 9, 2019, i.e., the beginning of the 22-month lookback period, and continuing until June 7, 2020, the last day T.M. was in CSB's temporary custody before being returned to Father's legal custody on June 8, 2020.

{¶14} Section 1.45 addresses the computation of time and states:

> If a number of months is to be computed by counting the months from a particular day, the period ends on the same numerical day in the concluding month as the day of the month from which the computation is begun, unless there are not that many days in the concluding month, in which case the period ends on the last day of that month.

Applying Section 1.45, T.M. was in the temporary custody of CSB in the prior case for eight months and 29 days. In the 2021 case, the child was removed from her home on January 14, 2021, and adjudicated dependent on March 23, 2021. Pursuant to Section 2151.414(B), T.M. statutorily

entered the temporary custody of the agency on March 15, 2021, 60 days after her removal from home. As CSB filed its motion for permanent custody on July 9, 2021, T.M. was in the agency's temporary custody for three months and 23 days in the current case. Based on these calculations, the agency demonstrated that the child was in its temporary custody for 11 months and 52 days, i.e., more than 12 months of a consecutive 22-month period. Accordingly, the juvenile court did not err when it found that CSB had proven the "12 of 22" first-prong requirement by clear and convincing evidence.

{¶15} Father argues, however, that not all of the above-included days from the 2018 case may be counted because CSB had a motion for permanent custody pending in that case until the agency withdrew it on November 23, 2019. He cites no authority for the proposition that the child's time in the agency's temporary custody was tolled because of the pending motion for permanent custody in the prior case.

{¶16} Last year, this Court was presented with a "12 of 22" calculation dispute in which the agency had filed a prior motion for permanent custody within the same case in which it filed a second motion alleging, for the first time, "12 of 22" as a first-prong basis. *In re A.W.*, 9th Dist. Summit Nos. 29888 and 29900, 2021-Ohio-2095. We expressly noted that "[t]he question of whether a prior, but dismissed, motion for permanent custody tolls the "12 of 22" clock remains unanswered by the Ninth District and this Court has found no authority on this issue from any other appellate district." *Id.* at ¶ 21. Nevertheless, when acknowledging the holding in *In re C.W.*, 2004-Ohio-6411, at ¶ 26, that the time after the agency files its motion for permanent custody cannot be included for purposes of Section 2151.414(B)(1)(d), we wrote: "Read within the context of the whole paragraph, however, the Supreme Court was determining that the time while the

*relevant motion* was pending cannot be counted toward the "12 of 22" calculation." (Emphasis added.) *Id.* at ¶ 19.

**{¶17}** This Court's consideration of our prior discussions of the issue, based on holdings and reasoning by the Ohio Supreme Court, lead us to conclude that a pending motion for permanent custody in a prior case does not toll the time when calculating whether a child has been in agency temporary custody for purposes of Section 2151.414(B)(1)(d). Moreover, the plain language of Section 2151.414(B)(1)(d) does not provide for tolling of time for that or any other reason. The statutory requirements are simple: the child must have been in agency temporary custody for a combined total of 12 or more months of a consecutive 22-month period. Accordingly, based on the above calculations, CSB established that T.M. was in its temporary custody for 12 or more months of a consecutive 22-month period, thereby satisfying its first-prong burden. Father's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT T.M. "CANNOT" BE RETURNED TO THE LEGAL CUSTODY OF MOTHER OR FATHER WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED IN THE LEGAL CUSTODY OF MOTHER OR FATHER. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**ASSIGNMENT OF ERROR III**

THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION IN FAILING TO GRANT A SIX-MONTH EXTENSION.

**{¶18}** Father argues that the juvenile court erred by finding that T.M. could not or should not be returned to his custody and that an award of permanent custody to CSB was in the child's best interest. He argues that the judgment terminating his parental rights was against the manifest weight of the evidence as the greater weight of the evidence supported a first six-month extension of temporary custody. Father's arguments are not well taken.

Consideration of the 2018 case

**{¶19}** As an initial matter, Father argues that, because the juvenile court had before it the record of the 2018 dependency case involving the child and considered it for purposes of determining whether T.M. had been in the agency's temporary custody for 12 months of a consecutive 22-month period, it necessarily was required to consider Father's successful reunification efforts in that case as well when determining whether the child could not or should not be returned to his custody. Father cites no authority for this argument. The current case initiated by CSB in 2021 was based on concerns that existed at that time. Irrespective of whether Father remedied all concerns that existed in the 2018 case, serious issues subsequently arose which again necessitated the child's removal in 2021.

**{¶20}** Father did not challenge the child's dependency adjudication in the current case. While Father may have demonstrated the ability to provide a safe and stable home for T.M. by the end of the 2018 case, whatever progress he made in that case had lapsed when, in 2021, the child was again removed from her home which was no longer suitable to her well being. Moreover, while Father may have made strides in addressing his mental health issues which put his children at risk in 2018, by 2021 he was no longer engaged in mental health services and in fact denied any

need for them, despite significant mental health diagnoses in the 2018 case. Nevertheless, Father argues that the juvenile court should have given him credit for his "prior efforts" in the 2018 case. However, he ignores the concomitant negative impact of his argument, as it is a double edged sword. For example, the juvenile court could have reasonably concluded that Father's failure to sustain the progress he made earlier, only seven months after the child's prior return to his custody, demonstrated his inability to maintain a safe and stable home for T.M. without agency intervention.

{¶21} In each case the agency files, it must present clear and convincing evidence to support a child's adjudication as a dependent, neglected, and/or abused child. *See* Juv.R. 29; R.C. 2151.35. After any case is fully resolved, the agency may file a subsequent complaint alleging a child's dependency, neglect, and/or abuse when the child's circumstances give rise to new concerns. *See In re G.G.*, 9th Dist. Summit No. 29952, 2022-Ohio-1654, ¶ 13. When prior concerns arise anew to again place a child at risk or in a state of dependency, just as the agency must prove the allegations in the new complaint, a parent may not invoke his progress in the prior case to foreclose the State's ability to intervene to protect the child. This notion is equally applicable to custodial dispositions as the renewed concerns which gave rise to the child's most recent removal will have necessarily vitiated the evidentiary value of any remedial actions taken by a parent in a prior case. Accordingly, this Court is not persuaded by Father's argument that the juvenile court erred by failing to consider "his case[]plan compliance and progress" in the 2018 case.

Manifest weight of the evidence

{¶22} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder

of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶23} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under Revised Code Section 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under Section 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in Section 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

First-prong consideration

{¶24} In addition to "12 of 22" allegation discussed above, CSB alleged as an alternative first-prong ground that T.M. could not or should not be returned to the custody of either parent pursuant to Section 2151.414(B)(1)(a). Although the agency might allege alternative first-prong grounds in support of its motion for permanent custody, it need only prove one. *In re T.B.*, 9th Dist. Summit Nos. 29560 and 29564, 2020-Ohio-4040, ¶ 11. As this Court has already determined that CSB demonstrated that T.M. was in its temporary custody for at least twelve months of a consecutive 22-month period, we need not determine whether the agency also proved that the child could not or should not be returned to Father's custody. The juvenile court's finding that the agency met its burden of proof regarding the necessary first-prong requirement for permanent custody is not against the manifest weight of the evidence.

Best interest of the child

{¶25} The agency further proved that an award of permanent custody was in the child's best interest. T.M. lived with her Father and brother until the two children were removed when T.M. was nine years old. She was returned to Father's legal custody when she was 11 years old but was removed again seven months later. Mother has had negligible involvement with the child for over a decade.

{¶26} T.M. was almost 13 years old at the time of the hearing. She was in her second therapeutic foster home, having disrupted from the first based on certain unexplained behavioral issues. She has been diagnosed with post traumatic stress disorder, reactive attachment disorder, and depression. The guardian ad litem testified that the child does not trust people and has serious hygiene issues, frequently soiling herself and failing to bathe as necessary. T.M. is in counseling to address the trauma that led to her behavioral issues, as well as her recent disclosure of sexual abuse by Father. Although there is no proof of such abuse, the guardian ad litem testified that the

child's belief that it occurred, whether accurate or not, warrants ongoing mental health treatment. Father admitted that, during the seven months that T.M. was in his legal custody after the conclusion of the 2018 case, he did not continue to engage the child in counseling, claiming he did not have the chance to do so.

{¶27} T.M. lives in a home with a foster mother and five other girls. The guardian ad litem testified that she has only recently begun to feel at ease and develop a sense of belonging. The foster mother works with T.M. to help the child understand how to address hygiene issues. Since her removal from Father's home, T.M.'s academic performance has greatly improved. While failing all school subjects while in Father's care, the child is now excelling in most of her classes, engaging in extracurricular activities, and making friends.

{¶28} T.M. has refused to interact with Father since her removal from his home. The child further informed the caseworker early in the case that she did not want to visit with her brother. Mother has had no contact with the child in over a decade. Thus it appears that there is not evidence that T.M. was significantly bonded with her parents or her brother.

{¶29} The guardian ad litem reported that T.M. does not want to reunify with Father. He further opined that, based on his investigation, an award of permanent custody to CSB would be in the child's best interest.

{¶30} T.M. requires custodial permanence in an environment in which she can feel safe and secure. The record does not reflect that Father has done anything to address the instability and violence in his home which arose again after he stopped engaging in mental health services. He recently moved to a new home in a different county. Neither the caseworker nor the guardian ad litem had been able to schedule a time to visit Father's new home. The caseworker could rarely make contact with Father, while Father never responded to the multiple attempts by the guardian

ad litem to meet or talk. Therefore, neither the caseworker nor the guardian ad litem could verify Father's claim that he could now provide a suitable home for the child.

{¶31} Father testified that he loves T.M. and that he wants her to come home. He asserted that he would continue the child's counseling with a counselor she likes. He testified that he would reengage in counseling immediately if the court would give him more time to work toward reunification.

{¶32} Father did not indicate an understanding of the significance of T.M.'s issues, however. He claimed to be unaware that the child may have experienced any sexual abuse, and the caseworker testified that the child's claims had not been substantiated.[1] Father disputed that the child had had any academic or hygiene issues while in his legal custody. He admitted that the relationship between the child and her brother can be "tumultuous at times," although he described the event that led to the child's removal as merely "a commotion with the kids" when it actually involved domestic violence between Father and his son.

{¶33} Father had not developed any plan for supervising two teenaged children with special needs who did not get along. While working up to 12-hour shifts as a FedEx delivery driver,[2] the children would again spend unsupervised time together. Once Father arrived home from work, he would have very little interaction with them as he testified that he would continue to put them to bed at 7:30 p.m. to ensure that they received at least ten hours of sleep each night. The juvenile court could reasonably infer that T.M. would no longer be able to participate in

---

[1] The caseworker further testified that the child's counselor continues to address the issue of sexual abuse with T.M., and that any additional disclosures by the child would be investigated.
[2] The caseworker testified that Father worked 7 a.m. to 7 p.m., while Father testified that he was usually done with work at 4 p.m.

extracurricular activities while in Father's custody based on his imposed sleep schedule for the children.

{¶34} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and committed a manifest miscarriage of justice by terminating the parents' parental rights and awarding permanent custody of T.M. to CSB. Mother informed the guardian ad litem that she did not want custody of the child and agreed that permanent custody would be in T.M.'s best interest. Father made no progress in addressing the issues underlying the child's removal from his home. He failed to obtain a current mental health assessment in this case or reengage in any way in counseling or other mental health services. He had not developed any plan to ensure that T.M. would feel safe and secure in his home or that she would receive the mental health services necessary to address her severe trauma and emotional issues. In the meantime, the child is flourishing in her current therapeutic foster home where she now has a sense of security and belonging. She is free for the first time to engage in extracurricular activities and develop friendships. She has gone from failing all her classes to excelling in most. Her mental health issues are being addressed on a consistent basis. Under these circumstances, CSB established by clear and convincing evidence that an award of permanent custody was in the child's best interest. Accordingly, the juvenile court's judgment terminating Mother's and Father's parental rights and placing T.M. in the permanent custody of CSB was not against the manifest weight of the evidence.

{¶35} This Court rejects Father's argument that the juvenile court erred by refusing to grant an extension of temporary custody to give him more time to work on his case plan objective. Section 2151.415(D)(1) allows the juvenile court to grant a first six-month extension of temporary custody only if there is clear and convincing evidence that the extension is in the child's best

interest, the parent has worked toward reunification by achieving significant case plan progress, and there is reasonable cause to believe that reunification will likely occur within the period of the extension. It is well settled that, where an award of permanent custody is in the child's best interest, a six-month extension of temporary custody necessarily is not. *See In re A.S.*, 9th Dist. Summit No. 28743, 2017-Ohio-8984, ¶ 31. Moreover, Father failed to make any progress on his case plan objective, much less significant progress; and there is no reasonable cause to believe that reunification would likely occur within another six months. For the above reasons, Father's second and third assignments of error are overruled.

### III.

**{¶36}** Father's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

ANGELINA GINGO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

NEIL P. AGARWAL, Guardian ad Litem.

RANDALL C. BRAY, Attorney at Law, for Child.