[Cite as *In re M.S.*, 2023-Ohio-431.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: M.S. | : | APPEAL NOS. C-220105 |
|  |  | C-220119 |
|  | : | TRIAL NO. F-162337Z |
|  |  |  |
|  | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 15, 2023

*Kimberly V. Thomas*, for Appellant Mother,

*Angela J. Glaser*, for Appellant M.S.,

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Gretta M. Herberth*, Assistant Prosecuting Attorney, for Appellee Hamilton County Department of Job and Family Services,

*Raymond T. Faller*, Hamilton County Public Defender, and *Kimberly A. Helfrich*, Assistant Public Defender, Guardian ad Litem for M.S.

**WINKLER, Judge.**

**{¶1}** In these consolidated cases, the mother of M.S. appeals from the Hamilton County Juvenile Court's judgment granting permanent custody of M.S. to the Hamilton County Department of Job and Family Services ("HCJFS"). M.S. also appeals from that judgment.

**{¶2}** Mother and M.S. challenge the trial court's judgment on sufficiency and weight-of-the-evidence grounds. M.S. additionally argues that the trial court erred when it denied a motion by mother's attorney to continue the permanent-custody trial after mother failed to appear. HCJFS and M.S.'s guardian ad litem ("GAL") request that this court affirm. Mother's GAL, appointed during the proceedings in the juvenile court, has not filed a brief. For the reasons that follow, we affirm the juvenile court's judgment.

## Background Facts and Procedure

**{¶3}** M.S. was born in November 2010. HCJFS has been involved in her care since 2016. On October 31, 2016, M.S., along with her half siblings, were removed from her mother's home, and the Hamilton County Juvenile Court subsequently adjudicated M.S. to be dependent. The finding of dependency was due to the parents' substance abuse, mental health, and housing issues. HCJFS maintained temporary custody during the case, during which M.S. had several unsuccessful caregiver placements with family and friends and spent some time in foster care. That first dependency case ended when M.S.'s aunts were granted legal custody of M.S. on June 13, 2018.

**{¶4}** The current case relates to a dependency complaint filed in October 2018 after the court granted interim custody to HCJFS in an emergency order. The court subsequently continued that interim temporary custody, and HCJFS placed M.S.

in foster care after M.S.'s discharge from the hospital for treatment. The treatment related to M.S.'s significant mental-health issues that require therapy, medication, exceptional nurturing, and stability. Prior to M.S.'s hospitalization, her aunts had contacted HCJFS to report they could no longer care for M.S.

{¶5} Early in the case, M.S. was appointed independent counsel after her GAL reported that M.S. wished to be reunited with her mother, contrary to what her GAL believed to be in M.S.'s best interest. In March 2019, M.S. was adjudicated dependent. At the time, mother had failed to complete the case-plan services ordered when M.S. was previously in HCJFS's custody and father was unable to parent. Though HCJFS had sought permanent custody in the October 2018 complaint, the trial court granted only temporary custody. HCJFS moved to modify temporary custody to permanent custody on September 3, 2019.

{¶6} On February 10, 2021, after a series of continuances, a magistrate held a permanent-custody trial on HCJFS's change-of-custody motion related to M.S., who was then ten years old. At the trial, HCJFS presented three witnesses and eight exhibits in support of the request for permanent custody. Dr. Stephen Billman, the clinical psychologist who assessed mother, testified to facts demonstrating that mother has difficulty caring for herself, with her own mother cooking and shopping for her. Mother suffers from "Mild Intellectual Disability, Major Depressive Disorder," PTSD, and "Substance Abuse Disorder" and has debilitating anxiety related to traveling in a car. She was taking medication to control her wide range of issues but reported that she still had crying spells. Mother described herself during the assessment as "very mean and moody."

{¶7} Bailee Brown, the on-going HCJFS caseworker assigned to the case for two years, testified that mother seemed to be sober and was consistent in visiting with M.S. for two hours per week in a supervised setting. Mother also married during the pending proceedings and M.S.'s stepfather attended the visitation. Brown reported, however, that mother was extremely uncooperative with the agency, and Brown could not confirm that mother completed the requisite mental-health services or stable-housing goals necessary to correct the conditions that led to M.S.'s removal from mother.

{¶8} Brown acknowledged that mother and M.S. were bonded, and that M.S. wished to be returned to mother's care, but Brown testified that mother was incapable of providing the care M.S. needs. During Brown's limited interaction with mother, mother failed to even acknowledge M.S.'s serious mental-health issues and indicated that M.S.'s disruptive, violent conduct would disappear if she were returned to mother's care.

{¶9} Brown's testimony concerning M.S.'s significant mental-health issues was bolstered by the testimony of Nicole Schmitt, M.S.'s longtime therapist at the St. Joseph Orphanage. Schmitt also emphasized M.S.'s need for stability and commended M.S.'s care providers for ensuring that M.S. continued to attend the same school, located in the Winton Woods school district.

{¶10} M.S.'s mother did not appear at the permanent-custody trial, and neither mother's attorney nor mother's GAL could explain her absence. The magistrate denied a motion for a continuance made by mother's attorney and joined by M.S.'s independent attorney. Mother's GAL did not join in the motion for a

4

continuance and, at the conclusion of the permanent-custody trial, mother's GAL argued that a grant of permanent custody was best for mother.

{¶11} Father signed a voluntary surrender of parental rights prior to trial, and his attorney reported that he supported a grant of permanent custody to HCJFS rather than a grant of custody to mother.

{¶12} While the case was pending for a written decision, mother moved to reopen the case to present information relating to events occurring since the conclusion of the trial—her execution of a lease agreement and payment towards the rental obligation. The lease was dated April 1, 2021, involving a residence in Amelia, Ohio. The magistrate allowed mother to supplement the record with this evidence.

{¶13} On August 25, 2021, the magistrate issued a decision granting HCJFS's motion requesting permanent custody. Mother and M.S. filed objections.

{¶14} After an independent review of the record, the juvenile court adopted the magistrate's decision granting permanent custody. Though the court indicated that it was adopting the magistrate's factual and legal analysis, the court adopted the factual analysis and part of the legal analysis. The magistrate and the court both determined that M.S.'s best interest was served by committing her to the permanent custody of HCJFS. The court determined, however, based on M.S.'s custodial history and the law, the applicable R.C. 2151.414(B)(1) condition was the "twelve or more months of a consecutive twenty-two-month period" provision located in subdivision (d), not the cannot-or-should-not provision of subdivision (a) that the magistrate found applicable.

{¶15} After determining that M.S. had been in the temporary custody of HCJFS for 12 or more months of a consecutive 22-month period, and that permanent

custody with a goal of adoption was in M.S's best interest, the trial court granted HCJFS's motion for permanent custody. Mother and M.S. now appeal.

## II. Permanent-Custody Determination

{¶16} R.C. 2151.414(B)(1) establishes a two-pronged test for courts to apply when determining whether to grant a motion for permanent custody to a public children services agency. The statute requires the court to find, by clear and convincing evidence, that: (1) one of the enumerated conditions in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) permanent custody to the agency is in the best interest of the child under R.C. 2151.414(D)(1)(a)-(e). *See* R.C. 2151.414(B)(1).

{¶17} In a review of permanent-custody cases "we will not substitute our judgment for the trial court where some competent and credible evidence supports the essential elements of the case." *In re A.B.*, 1st Dist. Hamilton No. C-150307, 2015-Ohio-3247, ¶ 14, quoting *In re M.R.*, 1st Dist. Hamilton No. C-130401, 2013-Ohio-4460, ¶ 5. "Our review for sufficiency asks whether some evidence exists on each element. It is a test of adequacy, and whether the evidence is sufficient to sustain the judgment is a question of law." *Id.* at ¶ 15. Our review of the weight of the evidence "asks whether the evidence on each element satisfies the burden of persuasion, which in this case was a clear and convincing standard." *Id.* However, we must be mindful of the presumption in favor of the finder of fact. *See Eastley v. Volkman*, 132 Ohio St.3d 383, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

### A. 12-of-22 Determination

**{¶18}** The juvenile court determined the first prong of the permanent-custody test was satisfied as to M.S. because the child had been in the temporary custody of HCJFS for 12 or more months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(d). The juvenile court calculated approximately 16 months of temporary custody, which included a noncontinuous period of temporary custody that the magistrate left out. Mother and M.S. both challenge the 12-of-22 finding, but we determine it was supported by clear-and-convincing evidence.

**{¶19}** In determining whether a child has been in agency custody for 12 or more months of a consecutive 22-month period, a court considers all periods of time in which the child was in agency custody within a 22-month-look-back period that begins when the relevant R.C. 2151.413 motion for permanent custody was filed. *See In re N.M.P.*, 160 Ohio St.3d 472, 2020-Ohio-1458, 159 N.E.3d 241, ¶ 22-23; *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26; *In re T.M.*, 9th Dist. Summit No. 30197, 2022-Ohio-3219, ¶ 17.

**{¶20}** For purposes of the R.C. 2151.414(B)(1) calculation, a child is to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to R.C. 2151.28 or the date that is 60 days after the removal of the child from home. R.C. 2151.414(B)(1).

**{¶21}** Here, HCJFS moved to modify temporary custody to permanent custody on September 3, 2019. The 22-month period preceding that date began on November 3, 2017. M.S. and her mother do not dispute that M.S. was in the "temporary custody" of the agency for about seven months between November 3, 2017, and June 13, 2018, when the 2016 dependency complaint resolved with legal custody

awarded to M.S.'s aunts. Similarly, they do not dispute that M.S. was in the "temporary custody" of the agency for almost nine months after the agency filed the 2018 dependency complaint, but before the agency filed the motion for permanent custody that is at issue in this case. They calculate the relevant total without the period of custody when the 2016 complaint was pending.

{¶22} This position is contrary to the plain language of R.C. 2151.414(B)(1)(d). The Supreme Court explained that the time requirements of R.C. 2151.414(B)(1)(d) are met by noncontinuous periods of temporary custody, including the situation where a child was "placed in agency custody, removed from the agency's custody and then returned to the agency's custody." *In re N.M.P.* at ¶ 23. That is what occurred in this case. Because the "12 of 22" calculation is not limited to contiguous periods of custody, the juvenile court correctly determined that M.S. had been in the temporary custody of the agency for more than 12 months during the 22-month-look-back period.

{¶23} M.S.'s GAL, when responding to this assignment of error, contends that the period of temporary custody for purposes of meeting the 12-of-22 condition of R.C. 2151.414(B)(1)(d) is just over 12 months. She takes the position that the juvenile court when calculating the second period of temporary custody was required to use the date of adjudication, not the earlier date that was "60 days after the removal from the home," as set forth in R.C. 2151.414(B)(1). The argument rests on the ground that the agency's second complaint requested permanent custody as an initial disposition and was governed by R.C. 2151.353. We do not adopt the GAL's position, because her position does not consider that the agency's initial request for permanent custody was denied. When the juvenile court ultimately granted permanent custody to the agency, it was ruling on a change-of-custody motion filed under R.C. 2151.413 that triggered

R.C. 2151.414. Moreover, the language of R.C. 2151.414(B)(1) does not support the GAL's position. *See In re T.M.*, 9th Dist. Summit No. 30197, 2022-Ohio-3219, at ¶ 17.

{¶24} In sum, while the 12-of-22 calculation does not include days after the relevant motion for permanent custody was filed, the calculation does include all days during the 22-month-look-back period when the child was in temporary custody of the agency as contemplated by R.C. 2151.414(B)(1). Adding together the nonconsecutive periods of temporary custody, we determine that M.S. was in the temporary custody of HCJFS for over 16 months during the 22 months before the filing of the September 3, 2019 motion to modify temporary custody to permanent custody.

{¶25} Mother further argues the record fails to demonstrate any other condition that satisfies the first prong of the R.C. 2151.414(B)(1) analysis. We do not address this argument because clear-and-convincing evidence supported the juvenile court's determination that M.S. had been in agency custody for 12 or more months of a consecutive 22-month period, satisfying the condition found in R.C. 2151.414(B)(1)(d).

### B. Best-Interest Determination

{¶26} The court next must determine whether granting permanent custody to a children services agency is in the child's best interest. It is required to consider several factors, including the relationship between the child and the child's parents and foster caregivers, the child's wishes, the custodial history of the child, and the child's need for a legally secure permanent placement. R.C. 2151.414(D). *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 18.

{¶27} Mother and M.S. argue that the evidence did not support the juvenile court's determination that a grant of permanent custody was in M.S.'s best interest.

9

They contend M.S. should be returned to mother, the only other option to the court based on the circumstances of this case. Following our review of the record, we hold that the juvenile court's best-interest determination, made in accordance with R.C. 2151.414(D)(1) and the factors referenced therein, was supported by both the sufficiency and weight of the evidence.

{¶28} The record demonstrates that mother was consistent with supervised visitation and presented evidence of obtaining stable housing two months after the conclusion of the permanent-custody trial. The record additionally reveals that M.S. was well bonded with mother and wished to return to her care. This positive evidence, however, had to be considered with the rest of the record. Mother failed to successfully complete all case-plan services. She failed to cooperate with her caseworker and was unable or unwilling to meet her own needs. The evidence demonstrated a great unlikelihood that mother would be able to meet the needs of M.S., who has significant mental-health issues of her own, issues that mother dismissed.

{¶29} Relatedly, the record demonstrates that M.S. spent most of her life in the custody of HCJFS. She has not been in her mother's care since she was removed from the home in November 2016. Since entering HCJFS's custody in 2016, M.S. has been in seven different placements, including multiple relatives and foster parents. She had a "significant" need for a legally secure permanent placement, and the agency and GAL's plan is for permanency through adoption after a grant of permanent custody to HCJFS. The record demonstrates this plan is necessary as the evidence fully supports the juvenile court's determination that mother is very unlikely to meet the significant needs of M.S. and there are no appropriate relatives who have come

forward. M.S.'s future custodian will make decisions in M.S.'s best interest, including whether to continue contact with mother.

**{¶30}** The juvenile court's determination that a grant of permanent custody was in M.S.'s best interest was supported by both the sufficiency and weight of the evidence. Accordingly, mother's sole assignment of error and M.S.'s first and second assignments of error are overruled.

### III. Denial of Continuance at Permanent-Custody Trial

**{¶31}** M.S.'s final assignment of error relates to the disposition of the motion for a continuance made by mother's attorney at the permanent-custody trial. The magistrate denied the motion and later allowed mother to supplement the record with evidence that she had obtained housing. After the magistrate issued her decision granting permanent custody to HCJFS, both mother and M.S. filed objections on the ground that the magistrate had erroneously refused to grant the continuance request. Neither mother nor M.S. asked the juvenile court to accept additional evidence. The juvenile court subsequently overruled the objection challenging the magistrate's refusal to grant the continuance.

**{¶32}** Only M.S. maintains a challenge to the denial of the motion for a continuance, contending the court denied mother her right to testify. M.S. contends that mother's testimony was needed to rebut the caseworker's testimony that mother could not adequately address M.S.'s needs related to her behavioral issues. To the extent that M.S. may present this challenge when mother has abandoned it, we determine M.S. has failed to demonstrate error.

**{¶33}** This court reviews the denial of a continuance under an abuse-of-discretion standard. *In re E.A.*, 1st Dist. Hamilton No. C-130041, 2014-Ohio-280, ¶ 4.

11

An abuse of discretion involves an attitude that is unreasonable, unconscionable, or arbitrary. *See id.* at ¶ 4.

**{¶34}** In evaluating the motion for a continuance, the juvenile court was to consider (1) the length of the delay requested, (2) whether other continuances had been requested and received, (3) the inconvenience to those involved in the litigation, (4) whether the requested delay was for legitimate reasons, dilatory, purposeful, or contrived, (5) whether mother contributed to the circumstances that gave rise to the continuance request, and (6) any other relevant factors depending on the unique facts of the case. *See State v. Unger*, 67 Ohio St.2d 65, 67-68, 423 N.E.2d 1078 (1981), cited in *In re E.A.* at ¶ 5.

**{¶35}** We are unable to say the juvenile court abused its discretion in this case. The court confirmed that mother had knowledge of the trial date, provided from several sources, and mother never provided a reason for her absence from the trial. Mother also failed to express the length of the continuance requested, even when she moved to reopen the case and present new evidence. Mother failed to afford a reasonable assurance that if a continuance were granted, she would appear for a new court hearing. Additionally, some prior continuances were attributed to mother, when she changed her mind about a voluntary surrender in March 2020, and when she fired her attorney in September 2020 and was granted a continuance to obtain new counsel. Consequently, we overruled M.S.'s third assignment of error.

## IV. Conclusion

**{¶36}** In light of the foregoing analysis, we overrule all of the assignments of error and affirm the judgment of the juvenile court.

Judgment affirmed.

12

**CROUSE, P.J.,** and **BOCK, J.,** concur.

Please note:

> The court has recorded its entry on the date of the release of this opinion.