[Cite as *In re L.S.*, 2023-Ohio-707.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: L.S.

C.A. No.     30473

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 21 06 0433

DECISION AND JOURNAL ENTRY

Dated: March 8, 2023

---

SUTTON, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated Mother's parental rights and granted permanent custody of L.S. to Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2} Mother is the biological mother of L.S., born August 2, 2013. The child's paternity was established, but Father is deceased.

{¶3} L.S. was removed from his home at the age of three years based on deplorable conditions therein. Mother was convicted of attempted child endangering because of those home conditions. The child was later returned to Mother's custody.

{¶4} When L.S. was seven years old, CSB again obtained an emergency order of temporary custody and filed a complaint alleging that the child was neglected and dependent. The agency alleged that Mother was using methamphetamine in the presence of the child, that Mother's

housing of approximately 30 cats produced a strong odor of urine and feces throughout the home, that Mother was being evicted, and that L.S. was frequently missing school. After an adjudicatory hearing, the juvenile court found L.S. to be a dependent child but dismissed the allegation of neglect as not proven.

{¶5} After a dispositional hearing, the juvenile court placed L.S. in the temporary custody of CSB. The agency originally placed the child with a maternal aunt and uncle but later placed him in the home of nonblood kinship caregivers Mother suggested. The trial court adopted the agency's case plan as its order. The case plan required Mother to obtain substance abuse and mental health assessments and follow all recommendations; submit to random drug screening; and obtain and maintain safe, stable, and independent housing and a verifiable income source to meet the child's basic needs.

{¶6} Evidence presented at a review hearing demonstrated that Mother was not cooperative with the agency caseworker, she was refusing to submit to drug screens, she had cancelled seven of 18 visits with the child, and she was not complying with mental health and substance abuse case plan objectives. Ten months into the case, CSB filed a motion for permanent custody. The agency alleged that L.S. could not or should not be returned to Mother's custody based on her failure to remedy the conditions underlying the child's removal from Mother's home. CSB further alleged that a permanent custody disposition was in the child's best interest.

{¶7} After an evidentiary hearing, the juvenile court granted CSB's motion for permanent custody and terminated Mother's parental rights. Mother timely appealed and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN GRANTING [CSB'S] MOTION FOR PERMANENT CUSTODY AND DENYING MOTHER'S MOTION FOR A SIX MONTH EXTENSION.

{¶8} Mother argues that the juvenile court's judgment granting CSB's motion for permanent custody and denying Mother's motion for a six-month extension of temporary custody is against the manifest weight of the evidence. This Court disagrees.

{¶9} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶10} Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). The best interest factors include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and

whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834, 24850, 2009-Ohio-6284, ¶ 11. Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶11} Mother does not challenge the juvenile court's first-prong finding that the child could not or should not be returned to her based on her failure to remedy the concerns underlying the child's removal. Our review of the record supports the juvenile court's finding relative to the first prong of the permanent custody test. As will be discussed in greater detail below, Mother failed to engage in recommended mental health and substance abuse services and did not allow the caseworker or guardian ad litem to access her home to evaluate its condition. Clear and convincing evidence demonstrated that Mother had failed to remedy the concerns which necessitated the child's removal from her home. Accordingly, the juvenile court's finding that CSB proved its first-prong allegation is not against the manifest weight of the evidence.

{¶12} In challenging the trial court's finding that an award of permanent custody is in the child's best interest, Mother focuses her argument on the court's denial of her oral motion for a six-month extension of temporary custody. Specifically, she argues that the evidence established that she had substantially complied with her case plan requirements and that an additional six months would have allowed her to reunify with the child. Mother's argument is not persuasive.

{¶13} R.C. 2151.415(D)(1) allows the juvenile court to order a first six-month extension of temporary custody if clear and convincing evidence proves that "the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is

reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension." In this case, the evidence clearly and convincingly established that Mother had not made significant progress on her case plan objectives.

{¶14} The case plan required Mother to obtain a substance abuse assessment and follow all recommendations. The caseworker allowed Mother to obtain her substance abuse assessment at BrightView even though the agency recommended Community Health Center as it would have been able to address both Mother's substance abuse and mental health issues. Because Mother tested negative for illegal substances and self-reported that she had not used any drugs in ten years, BrightView made no treatment recommendations. Mother testified that she believed that this satisfied her substance abuse case plan objective.

{¶15} When Mother later told the caseworker that she felt depressed and was afraid she might relapse into drug use, Mother returned to BrightView for another assessment. At that time, she tested positive for methamphetamine use. BrightView recommended that Mother participate in weekly individual counseling, thrice weekly group sessions, weekly medical appointments, and biweekly case management meetings. Mother attended three medical appointments but no counseling, group sessions, or case management meetings. BrightView discharged Mother for lack of participation.

{¶16} Mother refused each of the caseworker's eight oral drug screen requests. She submitted to two additional drug screens at BrightView. Both were positive for methamphetamine use. Thereafter, Mother did not submit to further drug screening and would not respond to the caseworker's phone calls or texts. Mother had no documented period of sobriety throughout the case.

{¶17} The case plan also required Mother to obtain a mental health assessment and follow all recommendations. This requirement arose out of Mother's self-reported depression, the unsanitary state of her home, and the presence of more than 30 cats in her home. She had an assessment at Portage Path Behavioral Health which recommended that Mother seek a more thorough assessment at Summit Psychological Associates and participate in monthly counseling sessions. Mother did not obtain the recommended second assessment. She attended three counseling sessions, failed to appear for the next one, and did not schedule any more sessions.

{¶18} Mother testified that she believed that she had satisfied her mental health objective because she attended three counseling sessions. She believed that any counseling was voluntary, despite the requirement that she follow all recommendations. She stopped attending sessions because she did not like her counselor. Mother testified that she returned to Portage Path shortly before the permanent custody hearing for a psychological evaluation but she had not informed the caseworker of that.

{¶19} Finally, the case plan required Mother to demonstrate that she could meet the child's basic needs. Specifically, she had to obtain and maintain safe and stable housing and a verifiable income source. Although Mother reported that she was working at two pizza restaurants, she did not provide any verification to the caseworker. In addition, Mother continued to live in the same home from which the child was removed. She lived with a cousin with whom she had a history of physically violent interactions. Moreover, although Mother testified that she had made improvements to the home and got rid of all but two cats, she consistently refused to let the caseworker or guardian ad litem into her home. Accordingly, neither could verify that Mother had remedied the unsanitary conditions which posed a threat to the child's well-being. The agency

caseworker testified, however, that she could smell a strong odor of urine emanating from the home even as she stood outside.

{¶20} The caseworker testified that Mother had not substantially remedied the conditions underlying the child's removal from Mother's home. As to Mother's case plan compliance, the caseworker testified that it was "[m]arginal at best. It's been almost nonexistent." The guardian ad litem was unable to verify any progress Mother claimed to have made because Mother cancelled all seven or eight appointments the guardian ad litem made to meet with her.

{¶21} Under these circumstances, the juvenile court's denial of Mother's motion for a six-month extension of temporary custody was not against the manifest weight of the evidence. The evidence supported the finding that Mother had failed to make significant progress on her case plan objectives as required by R.C. 2151.415(D)(1). Moreover, because the clear and convincing evidence demonstrates that an award of permanent custody was in the child's best interest, an extension of temporary custody necessarily was not. *In re T.M.*, 9th Dist. Summit No. 30197, 2022-Ohio-3219, ¶ 35.

{¶22} L.S. was removed from Mother's custody briefly when he was three years old, based on deplorable home conditions that resulted in Mother's conviction for attempted child endangering. CSB again removed the child when he was seven years old.

{¶23} The caseworker found Mother's physical interaction with the child appropriate, but she expressed concerns regarding Mother's verbal interactions. Instead of asking L.S. about his life, Mother only discussed her own life and complained about other people involved in the case. While the child was once closely bonded with Mother, the caseworker testified that that bond was diminishing as Mother missed visits and L.S. became frustrated with Mother's failure to work towards reunification. While L.S. used to call Mother every evening, he stopped calling her as

frequently. In the meantime, however, the child's bond with his kinship caregivers continued to grow. The kinship caregivers were close friends with Father who lived with them before he died. L.S. had a close emotional relationship with Father and took his death hard.

{¶24} Early in the case, the child expressed a desire to return to Mother's care. As time passed and he saw Mother take little interest in meeting her obligations, L.S. told both the caseworker and guardian ad litem that he did not want to return to Mother's home. The guardian ad litem reported that the child was afraid that he would have to be removed again if he went home. In addition, the child expressed fears because of the history of violent altercations between Mother and her cousin. Although L.S. told his mental health specialist at Red Oak Behavioral Health that he enjoys visiting with Mother, the specialist testified that the child expressed negative thoughts about what it would be like if he were to return home. The guardian ad litem opined that an award of permanent custody was in the child's best interest.

{¶25} L.S. deserves permanence and stability. Mother failed to engage in the necessary services that might have helped her remedy the concerns that led to the child's removal from her home. She did not address her mental health and substance abuse issues, and she refused to allow the caseworker or guardian ad litem to conduct home visits to assess the condition of her home. Accordingly, there was no evidence that Mother was in a position to provide a safe and stable home for the child.

{¶26} On the other hand, the child is happy, safe, and secure in the home of the kinship caregivers who wish to adopt him. The guardian ad litem testified that L.S. has a mother- and father-figure in his current placement where he has a sense of home and belonging. The guardian ad litem further testified that he believes the caregivers who told him that they would honor the child's wishes to maintain a relationship with Mother.

{¶27} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by finding that permanent custody was in the best interest of the child. CSB removed L.S. from an unsafe, unsanitary, and unstable home. Mother failed to comply with her mental health, substance abuse, and basic needs case plan objectives. The child is in a safe and secure home environment with kinship caregivers who meet his needs and recognize his desire to maintain a relationship with Mother. The caregivers are also in a position to honor the child's memories of Father. L.S. does not want to return to Mother's custody, and the guardian ad litem opined that permanent custody would be in the child's best interest.

{¶28} For the reasons above, this Court concludes that the juvenile court's judgment denying Mother's motion for a six-month extension of temporary custody, terminating Mother's parental rights, and placing L.S. in the permanent custody of CSB is not against the manifest weight of the evidence. Mother's assignment of error is overruled.

III.

{¶29} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, J.
STEVENSON, J.
CONCUR.


APPEARANCES:

ANGELA KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.