[Cite as *In re A.W.*, 2021-Ohio-2095.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: A.W.

C.A. Nos.    29888
                 29900

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 18-07-000693

DECISION AND JOURNAL ENTRY

Dated: June 23, 2021

SUTTON, Judge.

**{¶1}** Appellants, S.W. ("Mother"), and C.B. ("Grandmother"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated Mother's parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court reverses and remands.

I.

**{¶2}** Mother is the biological Mother of A.W., born July 15, 2010. During the trial court proceedings, Grandmother, the child's paternal grandmother, was allowed to intervene as a party to this case. Although the trial court proceedings also involved Mother's three other children, they are not parties to this appeal. A.W.'s father has not appealed from the trial court's judgment.

**{¶3}** On July 20, 2018, CSB filed a complaint, alleging that A.W. was abused, neglected, and dependent because Mother was using illegal drugs, Father was selling drugs from the family

home, Mother had other men coming in and out of the home, and one of Mother's boyfriends sexually abused A.W.'s sibling. A.W. was placed in the emergency temporary custody of CSB.

{¶4} On August 29, 2018, A.W. was adjudicated a dependent child. Shortly afterward, Grandmother filed a motion for legal custody of A.W. Following a dispositional hearing, Grandmother was granted temporary custody of A.W. with an order of protective supervision by CSB.

{¶5} A.W. remained in Grandmother's temporary custody from October 11, 2018, until March 26, 2019. Grandmother filed an emergency motion to remove the child from her home because A.W. had serious mental health and behavioral problems and Grandmother had been unable to prevent the child from acting out and harming others in the home. The same day, A.W. was placed in the emergency temporary custody of CSB pursuant to an ex parte order.

{¶6} The child remained in the emergency temporary custody of CSB for the next several months. On June 24, 2019, while A.W. remained explicitly placed in the "emergency temporary custody" of CSB, the agency moved for permanent custody of the child. It alleged that A.W. should not or could not be returned to the custody of either parent, based on numerous grounds under R.C. 2151.414(E), and that permanent custody was in the best interest of the child. After the permanent custody motion was filed, the trial court continued A.W. in the "emergency temporary custody" of CSB.

{¶7} The initial permanent custody motion was set for a hearing to be held on January 28, 2020. On January 9, 2020, the guardian ad litem moved to continue the hearing to allow more time to investigate a potential relative placement for the child. The trial court denied the continuance, noting that the permanent custody motion had been pending for nearly seven months. The court explained that, if the parties believed that they needed more time, they should move for

an extension of temporary custody and noted that CSB "has the option to withdraw its Motion for Permanent Custody[.]" Although the trial court referred to an extension of temporary custody, there is nothing in the record to demonstrate that A.W. had been placed in the "temporary custody" of CSB or that any dispositional hearing had been held after she was removed from the temporary custody of Grandmother. *See* R.C. 2151.353(F)(2); Juv.R. 34(G); Juv.R. 13(D) and (E).

{¶8} Shortly afterward, CSB moved to withdraw its permanent custody motion and for an extension of temporary custody. On January 30, 2020, through a visiting judge, the trial court granted the agency's request to withdraw its initial permanent custody motion and granted an extension of temporary custody. This was the first time that the trial court ordered that the child be placed or continued in the "temporary custody" of CSB.[1]

{¶9} On June 18, 2020, CSB filed another motion for permanent custody of A.W. and the case later proceeded to an evidentiary hearing. Through its second motion, in addition to the grounds it alleged before, CSB also alleged the "12 of 22" ground for permanent custody. Following an evidentiary hearing, the trial court terminated parental rights and placed A.W. in the permanent custody of CSB. Notably, the only first prong finding made by the trial court was the "12 of 22" ground.

{¶10} Mother and Grandmother separately appealed, and their appeals were later consolidated. Mother raises four assignments of error and Grandmother raises one. Because Mother's first assignment of error is identical to Grandmother's sole assignment of error, they will be addressed together.

---

[1] Because the appellants do not challenge the child's dispositional placement after the first permanent custody motion was dismissed, this Court will not address whether A.W. was properly placed in the temporary custody of CSB at that time.

**GRANDMOTHER'S ASSIGNMENT OF ERROR**

**MOTHER'S ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR AND REVERSIBLE ERROR BY FINDING 12 OF 22 AS ONE OF THE REQUIRED PRONGS FOR PERMANENT CUSTODY.

{¶11}   Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1).  R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).  Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  (Internal quotations omitted.)  *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶12}   Although CSB had alleged numerous alternative grounds under the first prong of the permanent custody test, the trial court based its finding on the "12 of 22" ground to determine that the first prong was satisfied.  Through these assigned errors, Grandmother and Mother argue that the trial court erred in its "12 of 22" calculation.  Specifically, they dispute whether the trial court erred in its interpretation of R.C. 2151.414(B)(1)(d) by counting a specific seven-month period as time that A.W. spent in the "temporary custody" of CSB.

{¶13} "This Court reviews the trial court's interpretation of a statute as a matter of law under a de novo standard of review." *Sliwinski v. Village at St. Edward*, 9th Dist. Summit No. 24967, 2010-Ohio-3006, ¶ 11, citing *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, ¶ 8. Although the appellants did not raise this issue in the trial court, this Court will notice plain error here because the trial court's time calculation improperly included a significant period during which the child was not actually placed in the "temporary custody" of the agency.

{¶14} As relevant here, R.C. 2151.414(B)(1)(d) provides that the first prong of the permanent custody test is satisfied if the agency presents clear and convincing evidence that "[t]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period[.]"

{¶15} R.C. 2151.414(B)(1) further provides that "[f]or the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home." Relevant case law has held that the "12 of 22" month period must exist at the time the agency files its motion for permanent custody. *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, syllabus.

{¶16} Consequently, the applicable 22-month period in this case was between August 29, 2018, the date of A.W.'s adjudication; and June 18, 2020, when CSB filed the relevant motion for permanent custody. The parties do not dispute that the time A.W. spent in the temporary custody of Grandmother between October 11, 2018,[2] and March 26, 2019, should not be included in the

---

[2] Although the child may have been residing in Grandmother's home earlier, the trial court placed the child in her temporary custody on October 11, 2018.

"12 of 22" calculation. By the clear language of R.C. 2151.414(B)(1)(d), only time spent in "the temporary custody of one or more public children services agencies" is counted.

{¶17} The "12 of 22" period in this case, as calculated by the trial court, included August 29 until October 11, 2018 (one month and 12 days) and March 26, 2019, to June 24, 2020 (14 months and 29 days). That time frame, if properly included by the trial court as time spent in the "temporary custody" of CSB, would satisfy the statutory requirement for at least 12 months of a consecutive 22-month-period in the temporary custody of the agency.

{¶18} The challenge raised by Mother and Grandmother is that the trial court erred by including the time between CSB's filing of the first permanent custody motion on June 24, 2019, and the trial court's dismissal of the motion on January 30, 2020, in its "12 of 22" calculation. It is clear from the record that, if the trial court erred by counting those seven months, the "12 of 22" ground was not established in this case.

{¶19} To support their position, appellants quote from *In re C.W.*, 2004-Ohio-6411, at ¶ 26 that "the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." Read within the context of the whole paragraph, however, the Supreme Court was determining that the time while the relevant motion was pending cannot be counted toward the "12 of 22" calculation.

{¶20} The appellants further cite to a prior case from this Court, *In re J.B.*, 9th Dist. Summit Nos. 28752 and 28753, 2018-Ohio-244, but it is also not dispositive of this issue. Specifically, this Court explained in *In re J.B.*:

> This case presents an issue of first impression for this Court: whether a children services agency, that has filed a motion for permanent custody that has not been disposed, may file a subsequent motion for permanent custody prior to the commencement of the permanent custody hearing, to allege the additional first-

prong ground that the child has now been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period, merely because of the passage of time. For the reasons that follow, this Court holds that, in these circumstances, the agency lacks authority to file a subsequent motion for permanent custody when its prior motion for permanent custody remains pending and has not yet been disposed.

*Id*. at ¶ 10. This Court further explained:

Unless the motion is withdrawn in good faith or otherwise disposed in a manner which does not terminate the case, however, the agency is bound by the allegations in its original motion for permanent custody and may not further allege "12 of 22" grounds only because the passage of time due to continuances and other delays would otherwise support such grounds.

*Id*. at ¶15, citing *In re K.G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, and 03CA0068, 2004-Ohio-1421, ¶ 27.

{¶21} The facts in this appeal do not involve a prior permanent custody motion that remained pending when CSB filed its relevant motion for permanent custody. Instead, it involves a prior permanent custody motion that was dismissed after seven months and a new motion for permanent custody that was later filed. The question of whether a prior, but dismissed, motion for permanent custody tolls the "12 of 22" clock remains unanswered by the Ninth District and this Court found no authority on this issue from any other appellate district.

{¶22} Our review of the record pertaining to this seven-month period reveals that, aside from any issue with a prior permanent custody motion pending, A.W. was not actually placed in the "temporary custody" of CSB. A.W. remained explicitly placed in the "emergency temporary custody" of CSB throughout this period. This Court is unaware of any legal authority that permitted the trial court to equate a seven-month period of ex parte, "emergency temporary custody" with "temporary custody" for purposes of the "12 of 22" calculation.

{¶23} In interpreting the "12 of 22" provision of R.C. 2151.414(B)(1)(d), this Court must liberally construe its language to effectuate the following purposes:

(A) To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code, whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety;

(B) To provide judicial procedures through which Chapters 2151. and 2152. of the Revised Code are executed and enforced, and in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced.

R.C. 2151.01.

{¶24} Moreover, courts must always be mindful that "termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.'" *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist.1991). "Therefore, parents 'must be afforded every procedural and substantive protection the law allows.'" *Id*. Pertaining to the "12 of 22" provision of R.C. 2151.414(B)(1)(d) in particular, because parents' rights may be terminated merely because of the passage of a 12-month period, that time period must include assurances that parents' fundamental rights to reunification with their children are protected. *See In re K.G.*, 2004-Ohio-1421, at ¶ 21.

{¶25} As quoted above, R.C. 2151.414(B)(1)(d) authorizes the trial court to include a limited period of ex parte emergency temporary custody in the "12 of 22" period at the beginning of the case. Specifically, an order of ex parte emergency temporary custody to the agency that precedes the initial disposition ("the earlier of the date the child is adjudicated * * * or * * * sixty days after the removal of the child from home) may be included in the "12 of 22" calculation. R.C. 2151.414(B)(1)(d). The duration of that pre-dispositional, ex parte placement is explicitly limited by Ohio law, however.

{¶26} R.C. 2151.35(B)(1) requires that the trial court conduct a dispositional hearing within 30 days of the adjudicatory hearing and/or not later than ninety days after the complaint

was filed, unless the trial court extends that deadline for good cause shown. If the trial court fails to comply with these deadlines, it must dismiss the case without prejudice. R.C. 2151.35(B)(1); *In re K.M.*, 159 Ohio St.3d 544, 2020-Ohio-995, ¶ 31.

{¶27} Additional procedural protections are required when the trial court changes or modifies the disposition of the child after adjudication. R.C. 2151.353(F)(2) and Juv.R. 34(G) require the trial court to conduct a dispositional hearing on each change of disposition "as if the hearing were the original dispositional hearing[.]" Full dispositional hearings provide the parents with their due process opportunity to be heard; require the agency to prove that it has made reasonable reunification efforts; and require the trial court to make a dispositional decision, based on the evidence presented at a hearing, that such a disposition is in the best interest of the child. *See, e.g.,* R.C. 2151.417(A); R.C. 2151.42(A). Ex parte dispositional orders are intended to be brief, emergency placements, until the parties can be provided with proper notice and an opportunity to be heard. *See*, *e.g*., Juv.R. 13(B), (D), and (E).

{¶28} The trial court's implicit legal conclusion that a seven-month period of ex parte, emergency temporary custody constituted "temporary custody" to CSB for purposes of R.C. 2151.414(B)(1)(d) is not supported by Ohio law. Moreover, there is nothing in the record to suggest that the parents waived their rights to the procedural protections provided by R.C. Chapter 2151 and the Juvenile Rules. Consequently, the trial court erred by concluding that the "12 of 22" prong was satisfied in this case.

{¶29} Although CSB had alleged alternative first prong grounds for permanent custody in this case, the trial court made no other finding. This Court cannot make an alternative factual finding in the first instance "because such a ruling would exceed our jurisdiction as an appellate court." *In re E.M.*, 9th Dist. Wayne No. 14AP0030, 2015-Ohio-641, ¶ 9, citing *In re E.T.*, 9th Dist.

Summit No. 22720, 2005-Ohio-6087, ¶ 15. *See also* Section 3(B)(2), Article IV, Ohio Constitution. Consequently, Grandmother's assignment of error and Mother's first assignment of error are sustained insofar as explained above.

## MOTHER'S REMAINING ASSIGNMENTS OF ERROR

Because this Court reverses and remands the permanent custody judgment to the trial court, Mother's remaining assignments of error have been rendered moot and will not be addressed. *See* App.R. 12(A)(1)(c).

III.

{¶30} Grandmother's assignment of error and Mother's first assignment of error are sustained insofar as the trial court included a seven-month period of post-adjudication ex parte emergency temporary custody in its "12 of 22" calculation. Mother's remaining assignments of error were not addressed because they are moot. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and remanded for proceedings consistent with this decision.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.


APPEARANCES:

ANGELINA C. GINGO, Attorney at Law, for Appellant.

DENISE E. FERGUSON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

ANNETTE POWERS, Guardian ad Litem.