[Cite as *In re A.W.*, 2023-Ohio-1268.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| IN RE: A.W. | C.A. No. 30486 |
| | |
| | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| | COURT OF COMMON PLEAS |
| | COUNTY OF SUMMIT, OHIO |
| | CASE No. DN 18-07-693 |

DECISION AND JOURNAL ENTRY

Dated: April 19, 2023

---

SUTTON, Presiding Judge.

**{¶1}** Appellant, S.W. ("Mother"), appeals a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her minor child in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother is the biological mother of A.W., born July 15, 2010. Although the trial court proceedings also involved Mother's three other children, as well as the paternal grandmother, they are not parties to this appeal. A.W.'s father has not appealed from the trial court's judgment.

**{¶3}** A.W. was originally removed from Mother's custody during April 2018, pursuant to an emergency order in a prior juvenile case. That case was later dismissed without prejudice because of statutory time limits. On July 20, 2018, CSB filed a new complaint to commence this case, alleging that A.W. was abused, neglected, and dependent because Mother was using illegal

drugs; Father was selling drugs from the family home; Mother had other men coming in and out of the home; and A.W. had been exposed to sexual abuse. A.W. was placed in the emergency temporary custody of CSB. Mother was also charged with, and convicted of, child endangering for failing to protect her children from abuse. It was later revealed that A.W. had also been exposed to physical abuse while living in Mother's home.

{¶4} A.W. was adjudicated a dependent child and was initially placed in the temporary custody of the paternal grandmother ("Grandmother"), under an order of protective supervision by CSB. Five months later, however, Grandmother filed an emergency motion to remove the child from her home because A.W. had serious mental health and behavioral problems and Grandmother had been unable to prevent the child from acting out and harming others in the home. A.W. was placed in the emergency temporary custody of CSB, and she remained in that ex parte disposition for much of the next year.

{¶5} A.W. engaged in ongoing counseling to address her past trauma, but she continued to disrupt from foster home placements because of her aggressive and harmful behavior. Mother worked on the reunification goals of the case plan but her relationship with A.W. did not improve because A.W. harbored deep anger and resentment toward Mother for failing to protect her. Counseling between A.W. and Mother was briefly attempted, but it did not prove to be helpful because A.W. was not then ready to speak to Mother about the trauma she endured while in Mother's care.

{¶6} On June 18, 2020, CSB moved for permanent custody of A.W., alleging that A.W. should not or could not be returned to the custody of either parent, based on numerous grounds under R.C. 2151.414(E), and that permanent custody was in the best interest of the child. As its

first-prong ground, CSB also alleged that A.W. had been placed in its temporary custody for at least 12 months of a consecutive 22-month period.

{¶7}   Following an evidentiary hearing, the trial court terminated parental rights and placed A.W. in the permanent custody of CSB.  Although CSB had alleged numerous first-prong grounds for permanent custody, the only first-prong finding made by the trial court was the "12 of 22" ground.  On appeal by Mother and Grandmother, this Court reversed the trial court's judgment, concluding that the trial court erred in basing its judgment on the "12 of 22" ground.  *In re A.W.*, 9th Dist. Summit Nos. 29888 and 29900, 2021-Ohio-2095, ¶ 28-30.  The judgment was reversed solely as to the "12 of 22" finding, because "[t]he trial court's implicit legal conclusion that a seven-month period of ex parte, emergency temporary custody constituted 'temporary custody' to CSB for purposes of R.C. 2151.414(B)(1)(d) [was] not supported by Ohio law." *Id.* at ¶ 28.

{¶8}   On remand, the trial court held a conference with the attorneys and scheduled briefing on the issue of whether the evidence admitted at the prior permanent custody hearing supported granting permanent custody on one of the alternative first-prong grounds alleged in CSB's original motion.  CSB filed a brief on the issue, which asserted that it had alleged and proven alternative first-prong grounds at the prior hearing.  Mother did not file a brief to oppose CSB's position on the issue.

{¶9}   The trial court agreed with CSB's argument that it had proven an alternative first-prong ground at the 2020 permanent custody hearing.  Specifically, the court found that CSB had proven that A.W. could not or should not be returned to the custody of her parents because of her unresolved mental health and behavioral problems that stemmed from the continuing trauma she suffered while living in Mother's home.  *See* R.C. 2151.414(B)(1)(a); R.C. 2151.414(E)(16).  Despite ongoing counseling to understand her past trauma and develop appropriate coping skills,

A.W. would need continued counseling to learn how to regulate her impulsive and aggressive behavior and be emotionally able to move on with her life.

{¶10} Because one year had passed since the prior permanent custody hearing, the trial court scheduled a hearing for the parties to present recent evidence about the best interest of the child. Following the hearing, the trial court found that permanent custody was in the child's best interest. Consequently, it found that CSB had established both prongs for permanent custody under R.C. 2151.414(B)(1)(a). The trial court terminated parental rights and placed A.W. in the permanent custody of CSB. Mother appeals and raises two assignments of error.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT'S GRANTING OF [CSB'S] MOTION FOR PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶11} Mother's first assignment of error is that the trial court's permanent custody decision is against the manifest weight of the evidence. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re*

*Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶12} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶13} The trial court found that the first prong of the permanent custody test was satisfied in this case under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E)(16). R.C. 2151.414(B)(1)(a) provides that the child "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[]" if the trial court finds "[a]ny other factor the court considers relevant" under R.C. 2151.414(E)(16). In this case, the trial court found the following facts to constitute an "other" relevant factor that prevented A.W. from returning to Mother's custody. Before the age of eight, A.W. had experienced significant trauma while living in Mother's custody, including being exposed to physical and sexual abuse, such as witnessing her younger brother being raped; watching her parents using drugs; and repeatedly witnessing Mother engaging in sexual conduct. Despite being in ongoing counseling for over a year at the time of the 2020 hearing, A.W. was still exhibiting significant behavioral problems, extreme anger toward Mother, and fear of returning to Mother's home. Consequently, the trial court concluded that A.W. was not emotionally able to return to the custody of either parent.

**{¶14}** Although the trial court had asked the parties to submit briefs before it decided this issue, Mother did not file a brief to oppose CSB's position that it had established an alternative first-prong ground at the 2020 permanent custody hearing. Moreover, Mother has not challenged the first-prong ground on appeal.

**{¶15}** Instead, Mother disputes only the trial court's finding that permanent custody was in the best interest of A.W. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the factors outlined in R.C. 2151.414(E)(7)-(11) apply.[1] R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

**{¶16}** Mother had limited interaction with A.W. for four and a half years during this case. After A.W. was removed from her custody in April 2018, Mother initially had weekly, supervised visits with the child. A.W. began to exhibit serious behavioral outbursts, which her therapist concluded were triggered by A.W. interacting with Mother. A.W. had also harmed or threatened to harm others, which had resulted in her disruption from several temporary placements. A.W. informed her counselor that she was angry with Mother because she had not protected her from the trauma that she suffered in Mother's home. Because of her anger toward Mother, A.W. once bit Mother during a visit and repeatedly expressed a desire to harm or kill Mother. Consequently, visits between Mother and A.W. were suspended for approximately ten months.

**{¶17}** During the initial suspension of their visits, Mother and A.W. engaged in some joint counseling with A.W.'s therapist. Supervised visits between Mother and A.W. resumed after a

---

[1] The trial court did not find that any of those provisions applied to the facts of this case.

few months, but the visits were again suspended after only two visits, based primarily on the recommendations of A.W.'s therapist and the guardian ad litem. A.W.'s therapist believed that A.W.'s interactions with Mother were causing the behavioral outbursts and impaired the child's progress in counseling. Joint counseling between Mother and A.W. was also suspended because the sessions were too upsetting for A.W., who was not emotionally prepared to discuss her past trauma with Mother. By the time of the 2022 best interest hearing, court-authorized interaction between Mother and A.W. had been suspended the second time for nearly one and a half years.

{¶18} Mother did have one face-to-face interaction with A.W. during that period, when A.W. ran away from the foster home and went to visit Mother. Mother asserted that the visit, initiated by A.W., demonstrated that the child wanted to see her. The facts surrounding the incident, however, also reflected questionable judgment on Mother's part.

{¶19} Approximately six weeks before the hearing, A.W. ran away from the foster home because she was being teased by other children in the home. Between the hours of two and four in the morning, A.W. and a friend rode bikes for a while and then went to the home of a man they did not know, knocked on the door, and he agreed to drive them to see Mother in another county. While riding in the man's car, A.W. called Mother on the man's cell phone because he could not find Mother's address.

{¶20} According to Mother's account of the incident, the girls had been with this man for at least a couple of hours, and she "felt uncomfortable with that." She gave them directions to the home of the maternal grandmother, but it is unclear whether Mother was then at the grandmother's home or drove there to meet them.

{¶21} The parties disputed what transpired after the children met Mother at the home. CSB presented evidence that the girls stayed with Mother long enough to watch a movie and have

pizza. Mother testified, however, that the girls took showers and she immediately tried to contact the caseworker, but she did not reach him for about an hour. Mother explained that she could not call the foster parents because she did not have a phone number for them. She also testified that she had not contacted law enforcement because she did not know which department to call, given that A.W. had traveled from one county to another.

{¶22} By the time of the 2022 best interest hearing, A.W. had been living in the same therapeutic foster home for 21 months and had developed a close bond with the family. The foster family had been trained by the Village Network, the same behavioral health organization where A.W. received counseling. A case manager at the Village Network regularly met with A.W. and the foster family and monitored A.W.'s progress in the foster home. The foster family was certified as a foster-to-adopt family, but there was no specific evidence about whether they planned to adopt A.W.

{¶23} A.W. had been in weekly counseling with the same therapist for three and a half years and was developing coping skills to deal with her past trauma. The current foster family supported A.W.'s counseling and followed the therapist's recommended tactics to help A.W. continue to make progress outside of counseling sessions. The foster family was also willing to keep A.W. engaged in counseling as recommended by her therapist. Unlike when she lived in Mother's home, A.W. felt safe and secure with the foster family.

{¶24} The wishes of A.W. were expressed through the guardian ad litem and the child herself. A.W. had consistently expressed that she did not want to live with Mother. A.W. was angry at Mother for failing to protect her and she continued to believe that Mother would not keep her safe.

**{¶25}** The guardian ad litem explained that, in her many years serving as a guardian ad litem, this had been one of the "most horrific cases" that she had ever worked on. Echoing the same concerns expressed by other witnesses, the guardian ad litem emphasized that A.W. had been exposed to terrible trauma in Mother's home and had been "profoundly affected" by her exposure to physical and sexual abuse and adults openly engaging in sexual and drug activity.

**{¶26}** The guardian ad litem commended A.W. for making progress in counseling by learning to understand her past trauma and control her angry outbursts. She further testified, however, that during the past four years, Mother had not accepted any responsibility for failing to protect A.W. in the past, nor had she developed the necessary insight to enable her to protect A.W. at that time.

**{¶27}** The trial court also conducted an in-camera interview of A.W. after the best interest hearing. No transcript of the hearing is included in the record, so this Court will presume that the trial court properly found that A.W. expressed wishes consistent with the recommendation of the guardian ad litem. *See In re M.W.*, 9th Dist. Summit No. 23912, 2008-Ohio-1049, ¶ 22. The trial court explained that A.W. would like to stay with her current foster family and also continue to see Mother. A.W. also stated that, even if she could not remain in the current foster home and/or continue to have contact with Mother, she did not want to live with Mother.

**{¶28}** A.W.'s custodial history included the first eight years of her life in Mother's home. During that time, she was exposed to physical and sexual abuse, and witnessed Mother and other adults in the home regularly engaging in sexual and drug activity. One witness explained that A.W. could describe details about heroin use and other adult activities that a child her age should not know. After three and a half years of weekly counseling, A.W. was just beginning to process the trauma that she experienced.

{¶29} At the time of the hearing, A.W. had been living outside Mother's custody for almost four and a half years. During that period, A.W. had lived in seven different temporary placements because her behavioral problems had caused disruption of her placements. A.W. had made significant progress in counseling while in her most recent placement, which had lasted for almost two years. A.W. had been in a stable placement for nearly two years, but she needed a legally secure permanent placement. CSB had investigated several potential relatives but had been unable to find a suitable relative who was willing and able to provide the child with a permanent home. A.W.'s father had not engaged in case planning services and had not expressed an interest in taking custody of the child.

{¶30} Mother sought legal custody of A.W., but she was not able to provide her with a suitable home. A.W. continued to struggle with mental health and behavioral issues and she did not trust Mother to protect her. Moreover, although the trial court found that, prior to the December 2020 permanent custody hearing, Mother had complied with the case plan requirement that she engage in drug treatment and demonstrate a sustained period of sobriety, Mother again tested positive for methamphetamine and amphetamine two times before the 2022 best interest hearing. Mother denied that she was again abusing those drugs, but she offered no other explanation for the positive drug screens. The trial court reasonably concluded that Mother was not able to provide a suitable home for A.W. and that a legally secure permanent placement would be achieved by placing the child in the permanent custody of CSB.

{¶31} Given the substantial evidence before the trial court, it did not lose its way in concluding that permanent custody was in A.W.'s best interest. *See Eastley* at ¶ 20. Mother's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

> THE TRIAL COURT ERRED IN FINDING THE AGENCY MADE
> REASONABLE EFFORTS[.]

**{¶32}** Mother's second assignment of error is that the trial court erred in finding that CSB had made reasonable reunification efforts. Mother does not argue that CSB failed to make reasonable reunification efforts prior to moving for permanent custody in 2020. Instead, she focuses on whether, after this Court's reversal and remand of the first permanent custody judgment, CSB made reasonable reunification efforts on remand.

**{¶33}** This Court reversed the prior permanent custody judgment because its "12 of 22" finding, its only first-prong ground for permanent custody, was not supported by the evidence. *See In re A.W.*, 2021-Ohio-2095, at ¶ 28-30. The judgment was reversed solely because of an error in the first-prong finding, not because of any other shortcomings in the agency's case. Notably, the scope of this Court's mandate on remand did not require CSB to make reasonable reunification efforts because it had not done so previously. *Compare In re H.S.*, 9th Dist. Summit No. 29401, 2019-Ohio-4334, ¶ 23, 26 (reversing and remanding a permanent custody judgment because the agency had not made reasonable reunification efforts). The trial court satisfied this Court's mandate on remand by entering a new permanent custody judgment that included a first-prong ground that was supported by the evidence.

**{¶34}** Mother has failed to cite any legal authority to support her implicit argument that the trial court was required to make a finding that CSB had made reasonable reunification efforts in its permanent custody decision on remand. The statutory requirement for the trial court to make reasonable efforts findings in dependency, neglect, and abuse cases is set forth in R.C. 2151.419. R.C. 2151.419(A) specifically required CSB to establish that it had made reasonable efforts toward reunification or to prevent continued removal of A.W. from the home:

at any hearing held pursuant to section 2151.28 [shelter care], division (E) of section 2151.31 [ex parte emergency temporary custody], or section 2151.314 [shelter care placement], 2151.33 [pre-adjudication temporary placement], or 2151.353 [initial disposition following adjudication] of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home[.]

*In re K.H.*, 9th Dist. Summit No. 22765, 2005-Ohio-6323, ¶ 9. *See also In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 43. Mother makes no argument that the trial court failed to make the requisite findings at those hearings or that the findings were not proper.

{¶33} Instead, Mother asserts that, because CSB filed an amended case plan on remand, the trial court was again required to find that CSB made reasonable reunification efforts. Mother cites no authority, and this Court is not aware of any, that requires the trial court to make a finding of reasonable efforts each time the agency files an amended case plan. "'It is an appellant's duty to demonstrate [her] assigned error through an argument that is supported by citations to legal authority * * *.'" *Pavlescak v. Ohio Concrete Resurfacing, Inc.*, 9th Dist. Lorain No. 21CA011817, 2023-Ohio-2, ¶ 20, quoting *Falah v. Falah*, 9th Dist. Medina No. 20CA0039-M, 2021-Ohio-4348, ¶ 15.

{¶34} At oral argument, Mother further argued that, because the trial court did make a finding that CSB had made reasonable efforts, this Court is required to review that finding for error. Mother likewise cited no authority to support that argument. Given that the trial court made a finding that it was not required to make, any error in that finding would be harmless. *See In re Tyler C.*, 6th Dist. Lucas No. L-07-1159, 2008-Ohio-2207, ¶ 75. Mother has failed to demonstrate reversible error in the trial court's finding on remand that CSB made reasonable reunification efforts. Her second assignment of error is overruled.

III.

{¶35} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.