[Cite as *In re J.B.*, 2018-Ohio-244.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.B.

C.A. Nos.    28752
                    28753

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN15-11-774

DECISION AND JOURNAL ENTRY

Dated: January 24, 2018

CALLAHAN, Judge.

{¶1}    Appellants, Mother and Father, appeal the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and awarded permanent custody of their child, J.B., to appellee Summit County Children Services Board ("CSB"). This Court reverses and remands.

I.

{¶2}    Mother and Father are the unmarried biological parents of J.B. (d.o.b. 10/10/15). Father was incarcerated and serving a nine-year prison sentence when the child was born at 32 weeks gestation. Due to the child's prematurity, Mother's cognitive delays which hindered her ability to care for the baby without prompting and intervention, and Mother's lack of family support in the area, CSB filed a complaint on the day J.B. was scheduled to be released from the hospital, alleging that the child was dependent. The juvenile court granted the agency an emergency order of temporary custody. At the adjudicatory hearing, Mother stipulated that J.B.

was a dependent child. The agency then presented evidence as to the child's dependency relative to Father. After the initial dispositional hearing, the juvenile court placed the child in the temporary custody of CSB, and adopted the agency's case plan as the order of the court.

{¶3} Over the course of the next several months, Mother was compliant with her case plan objectives. However, she remained unable to implement the information she received during intensive parenting classes to demonstrate an ability to safely and adequately care for the child. Approximately ten-and-a-half months after filing its complaint, CSB filed a motion for permanent custody. In support of the first-prong finding necessary for an award of permanent custody, the agency alleged that (1) the child could not be placed with either parent within a reasonable time or should not be placed with his parents pursuant to R.C. 2151.414(B)(1)(a), and (2) Father had abandoned the child pursuant to R.C. 2151.414(B)(1)(b). As the facts did not support such an allegation, CSB did not allege that J.B. had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period pursuant to R.C. 2151.414(B)(1)(d). The agency further alleged that an award of permanent custody was in the child's best interest. Mother filed a motion for legal custody, or in the alternative, for a six-month extension of temporary custody. The juvenile court scheduled a permanent custody hearing for a date three-and-a-half months later; however, the hearing did not take place.

{¶4} Three days after the permanent custody hearing was to have taken place, the juvenile court, without explanation, issued an order rescheduling the permanent custody hearing for a date two-and-a-half months later. One month after the latest scheduling order, the juvenile court held a file review and issued an order continuing the permanent custody hearing for another two-and-a-half months on the court's own motion. The next day, CSB filed another motion for permanent custody, notwithstanding the fact that its original motion remained

pending. The agency neither withdrew its original motion, nor requested leave to file a second motion. Nor did the agency caption its second motion as an amended or renewed motion.[1] Moreover, there is no record of the trial court having ruled on the first motion.

{¶5} In its second motion for permanent custody, CSB attempted to combine the first-prong provisions of R.C. 2151.414(B)(1)(a), (b), and (d), muddling the statutory language in the process. Specifically, the agency alleged:

> The child is not abandoned as to his mother, he is not orphaned, and he has been in the temporary custody of one or more public children service agencies or private child placing agencies for twelve (12) or more months out of a consecutive twenty-two (22) month period or previously in the temporary custody of an equivalent agency in another state, but cannot be placed with either parent within a reasonable time or should not be placed with his/her parents.

The only time CSB expressly alleged that Father had abandoned the child was in reference to an R.C. 2151.414(E) factor, relevant to first-prong grounds that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent pursuant to R.C. 2151.414(B)(1)(a). Moreover, as to the (B)(1)(a) prong, the agency disregarded the statutory language and changed the conjunction from "and" to "but" as quoted above.

{¶6} One week before the permanent custody hearing was ultimately held, Father filed a motion for legal custody to a third party, specifically a "close family friend" who lived in California. At the permanent custody hearing, the juvenile court considered CSB's second motion for permanent custody, Mother's motion for legal custody, and the parents' joint oral motions for a six-month extension of temporary custody. At the conclusion of the hearing, the visiting judge issued a judgment entry granting CSB's motion for permanent custody and

---

[1] This Court does not by this statement intend to indicate that a children services agency may properly file a subsequent motion for permanent custody in which it alleges new grounds merely by captioning the motion as amended or renewed, when a prior motion remains pending.

terminating Mother's and Father's parental rights to J.B.[2]  Mother and Father filed separate timely appeals, each raising two nearly identical issues for review.  This Court consolidates the parents' assignments of error to facilitate discussion.

II.

### MOTHER'S ASSIGNMENT OF ERROR I

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT J.B. HAD BEEN IN THE TEMPORARY CUSTODY OF CSB FOR TWELVE OR MORE MONTHS OF A CONSECUTIVE TWENTY-TWO-MONTH PERIOD.

### FATHER'S ASSIGNMENT OF ERROR I

> THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT J.B. HAD BEEN IN THE TEMPORARY CUSTODY OF SCCS FOR TWELVE OR MORE MONTHS OF A CONSECUTIVE TWENTY-TWO-MONTH PERIOD.

**{¶7}** Mother argues that the juvenile court erred by relying on its finding that J.B. had been in the temporary custody of CSB for 12 or more months of a consecutive 22-month period to support its award of permanent custody.  Specifically, Mother argues that the agency's first motion for permanent custody, which properly did not allege that J.B. had been in the temporary custody of CSB for 12 of 22 months, was the only viable motion for permanent custody for the juvenile court's consideration.  She argues, in other words, that the agency's second motion could no more than supplement the first motion, relating back to the date that the first motion was filed.  Father adopts Mother's argument.  This Court finds the argument to be well taken.

**{¶8}** Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both

---

[2] Although the juvenile court expressly denied Mother's motions for legal custody and a six-month extension of temporary custody, the judgment entry did not reference Father's motion for legal custody to a third party.

prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period; that the child is neither abandoned, orphaned, nor has been in the agency's temporary custody for 12 of 22 months and the child cannot be placed with either parent within a reasonable time or should not be placed with parents based on an analysis under R.C. 2151.414(E); or the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; and (2) that an award of permanent custody to the agency is in the best interest of the child based on an analysis under R.C. 2151.414(D). R.C. 2151.414(B)(1)/(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996).

{¶9} In this case, in support of the first-prong requirements, the juvenile court found that CSB had proved by clear and convincing evidence that Father had abandoned J.B., and that J.B. had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. Although CSB had also alleged in its motion for permanent custody that J.B. cannot be placed with either parent within a reasonable time or should not be placed with his parents, the juvenile court did not make a finding in that regard. The five first-prong factors enumerated in R.C. 2151.414(B)(1)(a)-(e) are alternative findings; accordingly, CSB must only prove one of those grounds in order to satisfy the first-prong requirement of the permanent custody test. *In re A.W.*, 9th Dist. Lorain No. 17CA011123, 2017-Ohio-7786, ¶ 17, citing *In re E.M.*, 9th Dist. Wayne No. 15CA0033, 2015-Ohio-5316, ¶ 12. Assuming the evidence would have supported the finding that J.B. could not or should not be placed with his parents, such a finding by the juvenile court would have satisfied the first prong of the permanent custody test. Under those circumstances, an erroneous finding by the juvenile court that J.B. had been in the temporary custody of CSB for 12 or more months of a consecutive 22-month period would

merely constitute harmless error. *See In re T.K.*, 9th Dist. Summit No. 28720, 2017-Ohio-9135, ¶ 10. As the juvenile court failed, however, to find alternative first-prong grounds as to both parents, an erroneous finding that J.B. had been in the temporary custody of CSB for at least 12 months would require reversal based on the agency's failure to prove the first prong of the permanent custody test.

{¶10} This case presents an issue of first impression for this Court: whether a children services agency, that has filed a motion for permanent custody that has not been disposed, may file a subsequent motion for permanent custody prior to the commencement of the permanent custody hearing, to allege the additional first-prong ground that the child has now been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period, merely because of the passage of time. For the reasons that follow, this Court holds that, in these circumstances, the agency lacks authority to file a subsequent motion for permanent custody when its prior motion for permanent custody remains pending and has not yet been disposed.

{¶11} R.C. 2151.413 sets forth the circumstances under which a children services agency may or shall file a motion for permanent custody. Although the agency, unless a statutory exception applies, "shall" file such a motion if a child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period, R.C. 2151.413(D)(1), the statute makes no provision for the filing of a subsequent motion for permanent custody when such a motion is already pending before the juvenile court. Based on the following discussion, this Court concludes that, when the agency has a pending motion for permanent custody, the agency's filing of a subsequent motion for permanent custody, which alleges for the first time that the child has been in its temporary custody for at least 12 months, violates the spirit of the law, the intent of the legislature, and notions of fairness.

{¶12} Based on a conflict certified by this Court, the Supreme Court of Ohio held that the "12 of 22" provision enacted in March 1999, may be invoked as first-prong grounds in a children services agency's motion for permanent custody only if the child has been in the agency's temporary custody for 12 or more months of a consecutive 22-month period at the time the agency files the motion. *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, ¶ 26. The Supreme Court specifically stated that "[i]n other words, the time that passes between the filing of a motion for permanent custody and the permanent-custody hearing does not count toward the 12-month period set forth in R.C. 2151.414(B)(1)(d)." *Id.* Given the substantial rights involved, the *In re C.W.* court emphasized the need to "balance the importance of reuniting a child with the child's parents against the importance of a speedy resolution of the custody of a child." *Id.* at ¶ 22, citing *In re K.G.*, 9th Dist. Wayne Nos. 03CA0066, 03CA0067, and 03CA0068, 2004-Ohio-1421, ¶ 19. Moreover, the Supreme Court of Ohio very recently reiterated the extreme importance of the parent-child bond, writing, "when the state attempts to permanently terminate the relationship between a parent and child, the parent must be afforded every procedural and substantive protection the law allows." (Internal quotations omitted.) *In re R.K.*, Slip Opinion No. 2018-Ohio-23, ¶ 5, quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997).

{¶13} In *In re C.W.*, the high court repeatedly cited to this Court's opinion in *In re K.G.* in discussing its reasoning. In *In re K.G.*, with regard to the "12 of 22" provision, this Court focused on the intent of the legislature to foster the concurrent goals of (1) limiting the time that a child spends in foster care, and (2) "preserving the family unit when possible." 2004-Ohio-1421, at ¶ 19-22. This Court further noted that, notwithstanding the statutory advisory time limits in which the juvenile court should hear a motion for permanent custody, such hearings are unfortunately frequently not heard for many months after the agency has filed its motion. *Id.* at ¶

23, 27; *see also* R.C. 2151.414(A)(2). In that case, the hearing was not held until nine months after the filing of the permanent custody motion; in the instant case, the juvenile court did not hold the permanent custody hearing until ten months after the motion was filed.[3] Nevertheless, in *In re K.G.*, we refused to sanction the agency's premature filing of a permanent custody motion to take advantage of delays necessitated by the trial court's docket as violative of the legislature's intent when it enacted the "12 of 22" grounds provision. *In re K.G.* at ¶ 27. Recognizing the slippery slope should the agency be permitted to gamble that its motion for permanent custody would not actually be heard until after the child had been in its temporary custody for at least 12 months, this Court held:

> [the agency] had no authority to move for permanent custody, alleging 12 months of temporary custody, until those facts had actually occurred. To hold otherwise would be contrary to common sense and would certainly achieve an unjust result.

*Id.* at ¶ 29.

{¶14} The same reasoning is applicable in this case, where CSB filed an initial motion for permanent custody prior to J.B.'s having been in the agency's custody for 12 months. The first motion did not allege "12 of 22" grounds. To allow CSB to wait until continuances of the permanent custody hearing resulted in the passage of time sufficient to support a finding that the child had been in the agency's temporary custody for more than 12 months, and then file a subsequent motion for permanent custody alleging "12 of 22" grounds, would also offend the intent of the legislature. Such tactics would allow the agency to file an initial motion for

---

[3] During closing argument, the assistant prosecutor acknowledged for the first time that CSB had filed two motions for permanent custody. Although the assistant prosecutor referenced the 200-day statutory time limit in which the trial court shall dispose of a motion for permanent custody, the statute by its plain language makes the time limit advisory. *See* R.C. 2151.414(A)(2) ("The failure of the court to comply with the time periods set forth in division (A)(2) of this section does not affect the authority of the court to issue any order under this chapter and does not provide any basis for attacking the jurisdiction of the court or the validity of any order of the court.") Nor has any Ohio appellate court construed the statutory time limit as mandatory.

permanent custody, effectively as a mere catalyst to cause the juvenile court to schedule a hearing. In instances when the hearing is (sometimes routinely) continued or delayed, albeit for good cause and for a reasonable period of time as permitted by R.C. 2151.414(A)(2), CSB has no authority to file a subsequent motion to take advantage of necessary and authorized delays to allege "12 of 22" grounds for the first time, when the agency's first motion remains pending. There is no authority to supplement an extant motion for permanent custody with "12 of 22" grounds that did not exist when the original motion was filed. In the absence of circumstances where the original motion has been disposed by denial after a hearing, or the children services agency has in good faith withdrawn the motion and filed an alternative less restrictive final dispositional motion, the agency, in the interests of justice and common sense, may not file a subsequent motion for permanent custody to allege new "12 of 22" grounds that did not exist when it filed its first motion.

{¶15} CSB may file a motion for permanent custody at any time alleging grounds enunciated in R.C. 2151.414(B)(1) or (2), as long as such grounds exist at the time the agency files its motion. *See In re C.W.*, 2004-Ohio-6411, at ¶ 27. Unless the motion is withdrawn in good faith or otherwise disposed in a manner which does not terminate the case, however, the agency is bound by the allegations in its original motion for permanent custody and may not further allege "12 of 22" grounds only because the passage of time due to continuances and other delays would otherwise support such grounds. To hold otherwise would be to sanction the agency's lack of the use of ongoing reasonable efforts to effect reunification once the child has

been in its temporary custody for 12 months as the parties wait for the commencement of the permanent custody hearing scheduled months into the future.[4] *See In re K.G.* at ¶ 27.

{¶16} The agency's allegations of the grounds supporting its request for permanent custody also implicate issues of due process, which includes notice. *See In re J.M.*, 9th Dist. Summit No. 24827, 2010-Ohio-1967, ¶ 11. As we wrote in *In re K.G.* at ¶ 28,

> Juv.R. 19 provides that a motion "shall state with particularity the grounds upon which it is made[.]" Implicit in that requirement is that the grounds alleged are grounds that presently exist and are based on facts that have already occurred.

{¶17} When CSB's first motion for permanent custody was filed, J.B. had not been in the temporary custody of the agency for 12 or more months. The agency's second motion for permanent custody did not supplant the first for reasons discussed above. Accordingly, Mother and Father had not received notice that they would have to defend against allegations that J.B. had been in the agency's temporary custody for at least 12 months.

{¶18} In the interests of justice, due process, and the common sense approach previously adopted by this Court in *In re K.G.*, as well as in support of the legislative intent to both effect timely permanence for a child and preserve the family unit when possible, this Court holds that a children services agency has no authority to file a subsequent motion for permanent custody, alleging "12 of 22" grounds, when the agency's original and undisposed motion for permanent custody did not and factually could not allege such grounds. The agency may not take advantage

---

[4] This fact is supported by the record in this case where, upon filing its second motion for permanent custody, CSB also filed a motion for judicial determination of reasonable efforts to finalize the permanency plan of adoption of J.B., indicating that the agency would no longer be working with Mother towards reunification, even though the permanent custody hearing was not scheduled for another four-and-a-half months. In fact, Mother's mental health case manager testified that she was asked to leave a visitation by an agency social work assistant to give Mother some private bonding time. When the case manager protested, saying that was the only time she had to work with Mother on parenting skills, the CSB employee reportedly told her that it was "[t]oo late in the case" to help Mother.

of continuances and delays in the commencement of the permanent custody hearing scheduled in response to the first motion to allege additional grounds that the child has now been in the agency's temporary custody for at least 12 months. Accordingly, the juvenile court erred by premising its award of permanent custody on its finding that J.B. had been in the temporary custody of CSB for 12 or more months of a 22-month period. Mother's and Father's respective first assignments of error are sustained.

### MOTHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND PLAIN ERROR IN PLACING J.B. IN THE PERMANENT CUSTODY OF CSB AS THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### FATHER'S ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS BECAUSE THE DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶19} Mother and Father argue that the juvenile court's award of permanent custody was not supported by sufficient evidence and was against the manifest weight of the evidence. Based on this Court's resolution of Mother's and Father's first assignments of error, the remaining two assignments of error have been rendered moot, and we decline to address them. *See* App.R. 12(A)(1)(c).

III.

{¶20} Mother's and Father's respective first assignments of error are sustained. We decline to address the remaining two assignments of error. The judgment of the Summit County

12

Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P. J.
CARR, J.
CONCUR.

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.

ALEXANDRA HULL, Attorney at Law, for Appellant.

HOLLY FARAH, Guardian ad Litem.